Last argument for this morning is Jackson versus City and County of Denver 20-1051. Counsel for appellants, please make your appearance. Thank you. Good morning. My name is Lucas Lorenz and I represent the appellants in this action. If the summary judgment for Denver is upheld, this case will become a roadmap for insulating governmental entities from First Amendment liability. All they'll have to do is let a lower level employee who's not a final policymaker make a decision and then have review of that decision be conducted outside of that employee's supervisory chain of command and that's because of the district court's misinterpretation of the term subordinate in the context of ratification. The unintended consequence of affirming would be to create a loophole in the law of ratification. Now, upholding the summary judgment for Denver requires that this court drastically depart from its precedent regarding what it means to be subordinate for purposes of ratification and it requires this court to disregard the clear language of the Denver City Charter and the collective bargaining agreement. Now, as an initial matter, though the appellants contend that there's a genuine issue of fact regarding who made the original decision to cancel this valid dues increase, for the sake of argument we can say it was Ms. Jennifer Cockrum, the Department of Safety's HR director. But regardless of who actually made the initial decision, the sheriff ratified that decision when he denied the grievance that had been initiated by FOP Lodge 27. The sheriff's ratification triggers municipal liability because the sheriff was the final policymaker with regard to grievances about Lodge 27 dues issues. He ratified the decision of someone who's subordinate to him with respect to that subject and he ratified not only the So when it comes to ratification here, there are essentially three components. Whether he's the final policymaker, whether he approved the decision of a subordinate, and whether he approved the basis for that decision. And let me stop you for a second. The last two, whether you approve the decision of the subordinate, whether you approve the basis of the the critical piece, it seems to me, is the first part. Because unless you can show that the sheriff is the final policymaker, your case doesn't go anywhere, does it? Absolutely not. All three have to be present. Okay. Well, help me to understand why the fact that the sheriff has the authority to resolve the step two grievance concerning makes him the final policymaker as opposed to perhaps the implementer of policy. And bear with me while I chart out this hypothetical that occurred to me. What if the official in Denver, the executive director, or let's say manager of safety, just for sake of argument, let's assume that that individual is the final policymaker and that individual says dues can be deducted from paychecks, but assessments can't. Okay. Then the sheriff in the step two process says, well, you know what? This is affirming, ratifying the decision that was made. This is an assessment. It is not dues. Why is it the sheriff in that scenario just implementing a policy directive that has been made? In other words, characterizing this particular issue as being an assessment, as opposed to dues, rather than actually making the policy himself? Well, your honor, I think in your example, it's essential that we've got the initial decision in your example being made by a final policymaker, the director of safety. And that may, in that the decision of the final policymaker, but in our case, it's undisputed that Ms. Cochram was not a final policymaker. And therefore we proceed to, okay, we don't have a decision being made by the final policymaker. So is there potentially ratification? And here, yes, there is. Okay. But that begs the question as to who ratified it. I mean, the fact let's take it as being undisputed that the sheriff ratified the decision of Ms. Cochram. Well, that still doesn't get at the question of whether the sheriff is the final policymaker for this particular area. I mean, the fact that the sheriff resolved step two grievances raised under the CBA helped me there. That's my point. How does that establish, if you look at the Denver charter or look at the characterized and what provision would you look to to say he is the final policymaker with respect to this specific decision? Yes, your honor. So I would look first to the Denver city charter section 9.9.1, which in relevant part, I'm paraphrasing says that collective bargaining is going to set the means for collection of union dues for one thing. And for another, it will set a grievance procedure for resolving those issues. So the Denver city charter 9.9.1 says, okay, conduct collective bargaining. And through that process, among other things, we'll figure out the means for the collection of union dues and a grievance procedure for resolving those issues. So then they do go through collective bargaining and we get the collective bargaining agreement that's in the record. And the means for collection of union dues is set forth in the collective bargaining agreement, article 2.2.3. And then the grievance procedure, step one, step two, et cetera, is in the collective bargaining agreement, article 21.4. And in article 21.4, it says the sheriff is the one who's going to make the final decision within the city about these grievances. The grievances that include the matters that the charter said, okay, you're going to figure out through collective bargaining, which is, like I said, one of those is collection of union dues. That's in 9.9.1 of the charter. And then the specifics of it are set forth in the collective bargaining agreement. So while the charter itself may not say the sheriff has final policymaking authority over collection of union dues, but what it does is it says, hey, there's this landscape of issues and they need to be ironed out and figured out through collective bargaining. And the charter grants that and says, okay, what you guys figure out through collective bargaining, that's going to be how this set of issues is determined. And that set of issues includes the collection of union dues and the grievance procedures. And then, so then the parties went on, did their collective bargaining, and the agreement that everybody came to, that Denver signed off on, the FOP signed off on, was the sheriff's the one who's grievances. So he does, with respect to grievances about union dues issues, he does have that final policymaking authority by virtue of charter section 9.9.1 and the collective bargaining agreement, article 21.4. What if the sheriff in this step two grievance had decided that I'm going to vote in favor of overturning this decision of Ms. Cockrum, and I'm going to say that any, that it doesn't matter whether it's an assessment or dues, it still can be deducted from everyone's salary. Would he have had authority to essentially change the entire policy by virtue of deciding this particular step two grievance? Absolutely. And I think that that's implicit in the fact that he is given the authority to decide this grievance. And this is, Denver's never taken the position that, oh hey, the sheriff actually shouldn't have been the one deciding this grievance. It's undisputed that he's properly deciding this grievance. And so implicit in that is his decision could go either way. And that's also implicit in the grievance procedure set forth in the collective bargaining agreement. Because obviously if his decision can only go one way, that's really, that's not really much of a grievance procedure. So he could have decided it the other way. It happens that he didn't and therefore the plaintiffs have been damaged and that led to this lawsuit. So by virtue of that, the charter provision, by virtue of the collective bargaining agreement, that's what gives the sheriff the final policymaking authority over deciding these grievances about the deduction of union dues. Even though he doesn't have final policymaking authority for payroll issues in general, you know, we're not making that contention. But with regard to this specific issue about union dues deductions, he does have the final policymaking authority. If you're not making the contention that he has final policymaking authority as to payroll matters in general, then why doesn't that raise the question that there could be somebody above the sheriff that said you can't deduct, you can't deduct assessments. And then the sheriff would be implementing and be obliged to implement that policy, even when doing grievances. In other words, there's no inconsistency with the sheriff resolving step two grievances and the sheriff not being the final decision maker. And in that scenario that you posited, that may very well could have been the situation. I mean that you could have had somebody who's in charge of payroll policy who says we don't deduct assessments. The sheriff in resolving the step two grievance has to operate within parameters that he has not defined. Therefore, he would not be the final decision maker. Why isn't that scenario entirely possible? Well, if that were the scenario and then there was a grievance of that decision by the higher up, pursuant to the terms of the charter and the collective bargaining agreement, the sheriff would still be the one to decide that grievance. So he would still have the final say. Well, he could decide that grievance, but if he's implementing the policy that he doesn't set, then it doesn't make him the final decision maker. I guess what I'm struggling with is I get your point that, look, Denver has said you're going to resolve these issues through collective bargaining. Collective bargaining agreement defines a procedure, which is the grievance procedure to address those matters. I get that. Okay. That doesn't say, however, and this is what I'm trying to understand, why is it necessarily inconsistent to have the as to grievances, but not be the final decision maker as to the subject matter of the grievance? In other words, his discretion is circumscribed by someone else. And if that were the case, then that someone else is the final decision maker, even though the sheriff is resolving the grievances. Well, so for purposes of ratification, though, I guess the distinction here is if we did have a final policy maker who made the initial decision, and then it went to the sheriff, then we wouldn't be in a situation of looking at a ratification theory for municipal liability. But the unique facts of this, where we do have the lower level employee who made the decision being someone who's not the final policy maker, that is what makes this specific situation different enough, because it fits into that, that body of law about ratification. Now, you'd be stuck with a ratification theory, you just wouldn't have a final decision maker, you who, you would still have Miss Cochran making this decision, but then it would be decision looking for a final decision maker. And for example, in this situation, you had what her supervisor, who said, what is his name, Taylor or something like that, to Troy Riggs, who is in charge of her and I'm not getting into the supervisor subordinate thing. That's not where I'm going on this. The point I'm making is, if Mr. Riggs is the final decision maker as it relates to these matters, and therefore, okay, let's use him. He's the final decision maker with respect to whether he's acted or not, whether he has acted or not. You've got Miss Cochran making a decision. And in the grievance process, the sheriff makes a decision A or B, he approves or he doesn't. Yes, he has ratified Miss Cochran's decision. He has ratified the rationale for it. But as long as he is not the person who actually sets policy on the underlying subject matter, what difference does it make? Well, because I think what we've got here is, Director Riggs may be the final policymaker with regard to payroll issues generally for the Department of Safety. But by virtue of this provision in the collective bargaining agreement, this specific issue is carved out for the sheriff. And so I think that's the distinction here is that we have to take it all in context. And Director Riggs' authority isn't necessarily exclusive of others because of the fact that the charter and the collective bargaining agreement explicitly give a portion of that to the public. You bet. Counsel, we're ready to hear from you. Miss Kelleher, is that right? Thank you, Your Honor, good morning. Good morning, and may it please the court, Ashley Kelleher, Assistant City Attorney with the Denver City Attorney's Office Employment Law Section on behalf of the appellee, City and County of Denver. The district court's dismissal of this case should be upheld because there are no material facts that show the city has a policy of declining to make payroll deductions to be used to fund an organization's political initiative when the city opposes the initiative. Appellants' claims fail for a lack of a municipal policy. The Denver charter and state law show the sheriff is not a final policymaker for payroll matters. Instead, final authority over human resources and payroll matters for employees under the umbrella of the Department of Safety rests with the Executive Director of Safety, Troy Riggs, at the time. The sheriff also did not ratify a subordinate's decision to halt the payroll deductions. He didn't have the authority to delegate the decision whether or not to make the payroll deductions. The human resources director who made the decision is not subordinate to him, and the sheriff did not ratify the bases for her decision. How do you respond to Mr. Lorenzo's argument that it was a carve-out through the collective bargaining agreement to create a dispute resolution mechanism, and by placing this responsibility on the sheriff to make him a final policymaker? Your Honor, the law does not allow carve-outs for contracts or collective bargaining agreements. What the law says, what the proprietary case says, is that you look at what the state law says regarding policymaking authority. And here, the policymaking authority is derived from the Denver City Charter and Colorado state law. A final policymaker has authority to establish municipal policy with respect to the complaint of action, which is the specific subject matter in question. So, the authority concerns the action alleged to have caused the particular constitutional or statutory violation issue. Who possesses that final policymaking authority is a matter of state law, and to determine who has policymaking authority, we examine the legal chain of authority. The city cited the Denver Charter Section 2.6.2, which says the manager of safety shall be the officer in full charge of said department. The city also cited Section 2.6.4 of the charter, which says the sheriff shall have full charge in custody of the jails and the writs, and that the sheriff shall exercise duties and perform powers and duties required by the constitution or laws of the state to be performed by the county sheriff. Per Colorado statute, the sheriff is likewise the custodian of the jails. He or she executes writs and is responsible for transporting prisoners. So, the charter and the state statutes are clear that the sheriff's authority is limited to jail operations and the care and custody of inmates. Well, the point is whether they are clear. I mean, 9.9.1, the point being is under the logic, as I understand it, of appellants, you have a policy that allocates certain subject matter to collective bargaining. Then you have a collective bargaining agreement that sets up a grievance process, and as a consequence of that, anything that falls within collective bargaining that covers certain subjects would therefore have as the policymaker the person who resolves the grievances. So, I mean, I don't understand why more than quoting generalities is necessary to grapple with the question of whether there can be a carve-out or not. Why can't there be a carve-out, and what tells you that there isn't a carve-out here? Because the collective bargaining agreement, the contract, is not law. Appellants cite to section 9.9.1 of the charter that says collective bargaining will be used to set compensation, fringe benefits, a means for collecting union dues, and a grievance procedure for resolving any of the above listed issues. And according to the plain language of that provision, this section refers to the union's ability to grieve disputes that arise during collective bargaining negotiations. This case doesn't have anything to do with collective bargaining. The section 9.9.1 says nothing about the sheriff's authority, so it's improper to draw on that section to create an argument that the sheriff is a final policymaker over payroll matters, when the charter clearly states the sheriff's authority is limited to jail operations. Is it clear that the final policymaker here would be the manager of safety? Why wouldn't it be the manager of finance? I believe it is, Your Honor, because the department of safety is a separate agency within the city and county of Denver, and according to the charter, the manager of safety has full control over that agency. So while city departments certainly do interact, the manager of finance would not have policymaking authority over whether or not the department of safety needed to what her name is, the person who made the decision here and the payroll office of the under the manager of finance, Cochran? Yes, Your Honor, that's correct, because the communications from the union regarding whether or not dues should, what dues should be deducted, the amounts go to the payroll department because the payroll department does that through their computer system. And the payroll department is part of the department of finance, right? That's correct, Your Honor. All that leads me back to my question, why isn't the manager of finance the final decision maker? Because the director of safety has control over decisions that affect the department of safety, and the department of safety has its own budget, they have their own operation, they over those sort of decisions for his agency. Well, could Ms. Cochran have implemented this decision entirely without connect talking to the payroll office in the manager of finance? She could have, Your Honor, yes, she could have said to the payroll department, you need to do this or that. Okay, let me let me focus on what I took to be your comment in your brief, and certainly was something that was addressed by the district court relative to whether Ms. Cochran was the supervisee or under the supervision of the sheriff. And I'm really struggling to see why that matters at all. I mean, propotinic does not use the word supervise, supervision, it uses the word subordinate. And we have, you know, we have a case David, for example, in which he had a civil service commission, ratifying decisions of subordinate officials, there wasn't any suggestion of supervision, their subordinate is broader than supervised. So where do you get that from? I and I don't understand where the district court got that from? Why does it matter? What matters, Your Honor, is that the policymaker delegate his policymaking authority to someone that's subordinate. So that doesn't have to be somebody he supervises, right? Not necessarily, Your Honor. But in this case, Jennifer Cochran was not subordinate to the sheriff, she wasn't subject to his authority or control. The record is undisputed that the human resources director reports directly to the executive executive director of safety. And that position is not within the sheriff's chain of authority. The HR director is not lower in rank or position, and the sheriff does not have review authority over the human resources director's decisions. Okay, well, that raises a number of questions that that's fine. I don't need to dispute those. The point I'm making is simply there. If I understand you, you are accepting the premise that she doesn't have it is not dispositive whether she is directly the supervisee of the sheriff, right? I would agree, Your Honor. Yes. Okay. But I don't think that district court erred in that determination. Because certainly being within the sheriff's chain of authority would show that he could potentially ratify her decisions. Well, the court look, the court used it as one of two things, I think. And I and the way that that was framed in the order, it seemed to me that maybe not, but I read them as being a debt establishing independent grounds for its decision. And I and and that's why I'm exploring it. Because it's not clear to me at all in light of propodnik and its language subordinate, that that is an independent ground. It isn't necessarily and well, it's it's an independent ground that the final policy make making authority have that the person that person ratify a subordinates, some determination, someone who is subordinate to them. All right. Turning to the appellant's ratification argument, a municipal municipal policy is established through ratification when a final policymaker approves the unconstitutional action of subordinates to whom authority has been delegated, subject to that policy policymakers review and approval and adopts the basis for that decision. The challenge action must have been taken pursuant to a policy adopted by the official responsible for making policy in that area of the city's business. ratification occurs only where a superior affirmatively approves and adopts the subordinates action and her rationale for that action. Let me explore if I if I if you allow me be your argument about waiver. I want to understand the waiver just to cite a case that you didn't cite in the district court. I mean, is that would that constitute in itself waiver? Well, Your Honor, the appellants failed to undertake that Brammer Holter analysis in the district court briefing at all. They did not present the final policymaker issue to the district court. And the 10th Circuit has held that propounding new arguments on an appeal and it's an attempt to prompt it to reverse the trial court undermines important judicial values. I thought all I thought the whole point below was whether the sheriff was the final policymaker. And so that's what and that's what the district court judge ruled on, right? Whether the sheriff was the final policymaker. That's, that's correct. Your Honor, the district court did rule on that, and they properly analyzed it. The city's point was that the appellants did not make any legal argument regarding final policymaker in the district court briefing. They did not provide any facts to support undisputed facts to support their argument that the sheriff was final, a final policymaker. But on appeal, they undertook the Brammer Holter analysis to fix their argument. And that was the city's point with that. The fact put in the record, though, to for it to make the argue under the Brammer Holter rubric, right? That's correct, Your Honor. But what what the what the law says is the issues must be presented to considered by and decided on the district court level. So I would agree and concede that that issue was considered by the district court and decided on the district court level. It just wasn't presented by the appellants. With respect to ratification, it's without a final policymaker, there can be no ratification. And the sheriff here was not a final policymaker over payroll matters. He did not and could not delegate that authority over payroll to a subordinate subject to his review and approval. It's also undisputed that the director of human resources, Jennifer Cockrum, made the decision. The fact that the sheriff doesn't know who made the decision shows he could not have delegated his authority to that person, nor did he review and approve that decision. The sheriff also didn't review and approve the basis for the human resources director's decision. The appellants claim that because the language in the sheriff's grievance response and the letter written by Jennifer Cockrum is similar, that means that the sheriff ratified his decision. But restating language is not the standard. The sheriff testified that someone from the city attorney's office, human resources, or payroll decided the deductions were a special assessment, not regular dues. And he did not know why the decision was made. He didn't know the reasoning behind the decision. Thus, the sheriff could not have ratified the HR director's decision to decline to make the payroll deductions sought by the FOP to fund its political campaign. Okay, your time is up. Thank you very much, counsel. You've got a few seconds left, I think. Mr. Lawrence. Thank you, your honor. Two points very quickly. Number one, we did argue that the sheriff was the final policymaker in our response to the motion for summary judgment. And if you'd like, I can give you the site to the record there, but it's plain as day. The second point, this situation is akin to an appeal board like that in the David case, where the appeal board can be the final policymaker for the matter under appeal, despite not having final policymaking authority for the day-to-day underlying decisions in that subject matter. So, for all these reasons, we respectfully request that you reverse. Thank you. Thank you for your helpful arguments, counsel. Case is submitted.